UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA SMITH,

  Plaintiff,       Civil Action No.  17-12056

v.            HON. VICTORIA A. ROBERTS
             U.S. District Judge
             HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL   U.S. Magistrate Judge
SECURITY,

  Defendant.
_____/

## REPORT AND RECOMMENDATION

  Plaintiff Christina Smith ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #18] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings and that Defendant's Motion for Summary Judgment [Dock. #22] be DENIED.

-1-

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on April 23, 2012, alleging disability as of September 30, 2008[1](Tr. 113).  After the initial denial of benefits on the current claim, Plaintiff requested an administrative hearing, held on November 6, 2013 before Administrative Law Judge ("ALJ") Dawn M. Gruenburg (Tr. 149).  On November 26, 2013, ALJ Gruenburg found that Plaintiff was not disabled from September 30, 2008 through the day of the decision (Tr. 149-161).  On March 6, 2015, the Appeals Council remanded the case to the ALJ for further fact-finding on the following basis: (1) Correction of the erroneous finding that 2011 earnings reflected work activity, and, (2) further discussion of a non-examining medical source's findings (Tr. 168).  Upon remand, the Appeals Council directed the ALJ to (1) consider whether *res judicata* applied to the period between September 30, 2008 and September 28, 2010, (2) obtain updated evidence concerning the alleged mental and physical impairments, (3) provide an evaluation of Plaintiff's subjective complaints, (4) provide a rationale for the Residual Functional Capacity ("RFC"), and (5) if warranted by the record, obtain additional vocational testimony (Tr. 169).

---

[1]

Plaintiff filed previous applications for DIB and SSI alleging disability on September 28, 2010 (Tr. 11).  After the initial denial, she requested a hearing before an ALJ but on February 21, 2012 withdrew the request, resulting in the dismissal of the claim on February 23, 2012 (Tr. 11, 118-121).

ALJ Patricia E. Hurt held a rehearing on September 18, 2015 in Mount Pleasant, Michigan (Tr. 37). Plaintiff, represented by Kimberly Lamb, testified (Tr. 53-77), as did Vocational Expert ("VE") Kenneth Browde (Tr. 77-88). On December 14, 2015, ALJ Hurt found Plaintiff not disabled (Tr. 13-24). On April 24, 2017, the Appeals Council declined to review the administrative opinion (Tr. 1-3). Plaintiff filed for judicial review of the final decision on June 23, 2017.

## II. BACKGROUND FACTS

Plaintiff, born November 4, 1972 was 43 at the time of the ALJ's decision (Tr. 26, 251). Her application states that she completed eighth grade and worked previously as an "auto tech," nurse's aide, dishwasher, food preparer, and painter (Tr. 287). Her current application for benefits alleges disability due to fibromyalgia, leg swelling, "prior lymphoma," hiatal hernia, "half a stomach due to cancer," "only one kidney 1997," and asthma (Tr. 286).

### A. Plaintiff's Testimony (September 18, 2015)

*Plaintiff's counsel prefaced her client's testimony by requesting 14 days after the hearing to submit additional records (Tr. 41). As to the issue of res judicata for the period between September 30, 2008 and September 28, 2010, counsel requested that the prior claim file be exhibited (Tr. 42). Counsel argued that she was unable to determine whether "new and material" evidence supported reconsideration of the earlier determination because she did not "have the prior claim file" (Tr. 43). The ALJ then noted that counsel represented*

-3-

*Plaintiff at the time of February, 2012 voluntary dismissal and that counsel "should have access to those records" in her own files* (Tr. 44). *Counsel acknowledged that she did not possess the medical records from the prior claim* (Tr. 43, 45). *The ALJ stated that she would examine the prior file but declined to add it to the current transcript* (Tr. 44). *The ALJ noted that the current transcript contained records going back to 1997* (Tr. 49).

Plaintiff then offered the following testimony:

She worked as a certified nurse's aide ("CNA") between 1997 and 2002 (Tr. 53-54). She also worked as an auto tech which entailed packing trash bags (Tr. 55). The auto tech position required her to lift up to 50 pounds without assistance (Tr. 55). She typically worked 12-hour shifts requiring her to stand or walk for the entire period (Tr. 56). In 2004, she worked as a painter for around one year (Tr. 57).

Plaintiff required her husband's help to take a shower in case her legs "gave out" and help washing her hair due to arm weakness (Tr. 57). Her husband was also required to remind her to take her medication properly due to her memory problems (Tr. 58). She noted that she currently took 20 medications (Tr. 58). When she failed to take her medication, she became irritable and anxious (Tr. 59).

She was unable to sit or stand for long periods (Tr. 59). She experienced temporary discomfort but ultimately good results from doing physical therapy (Tr. 60). Plaintiff was able to clean her entire house "from top to bottom" on good days, adding that she experienced up to four good days a week (Tr. 60-61). Plaintiff attended group therapy to

combat depression, anger, anxiety, a personality disorder, and mood swings (Tr. 61). She did not experience psychological problems while she was working (Tr. 61). Plaintiff took Advair for the condition of Chronic Obstructive Pulmonary Disorder ("COPD") (Tr. 62). She denied medication side effects from Advair and did not know whether she experienced side effects from any other medication (Tr. 62). She also took various medication for asthma and allergies (Tr. 63).

Plaintiff lived with her husband and 17-year-old stepdaughter (Tr. 63). Her stepdaughter helped her with household chores (Tr. 63-64). She had five living children of her own ranging from the ages of 27 to 17 (Tr. 64). Her own children were "adopted out" when they were younger (Tr. 64). Her husband was due to get out of jail later in the month (Tr. 64). In the meantime, her cousin helped her organize her medication and her stepdaughter helped her with personal care activities (Tr. 64).

Plaintiff experienced some relief from lower extremity leg cramping by taking Lyrica (Tr. 65-66). The leg numbness and cramping was precipitated by too much physical activity (Tr. 67). On a good day, she was capable of cleaning the house, doing laundry, and taking out the garbage (Tr. 68). She was able to make her bed on both good and bad days (Tr. 67). She was responsible for feeding and caring for her dog (Tr. 68-69).

Plaintiff was unable to climb stairs due to leg weakness (Tr. 70). She had been prescribed a cane but did not always use it (Tr. 70). Her back hurt after sitting or standing for long periods of time due to "degenerative disc failure" (Tr. 71). She relieved back pain

by sitting upright with her feet flat on the floor (Tr. 71). She tried to avoid reclining for extended periods due to back pain (Tr. 73). On good days, she would call her cousin or a friend and they would watch a movie at home together (Tr. 73). She went out to the movies with her family on a rare basis but experienced trouble sitting for long periods (Tr. 74). Her arms felt chronically sore and heavy (Tr. 74). In terms of psychological conditions, she experienced impatience, anxiety, anger, and mood swings (Tr. 74-75). She was learning coping techniques in psychological therapy, but her psychological conditions made it difficult to interact with others (Tr. 75). She did not experience psychological symptoms during her training to be a CNA (Tr. 76). She stopped working as a CNA because after becoming attached to patients, she became depressed when they passed away (Tr. 77).

### B.    Medical Evidence[2]

### 1. Records Related to Plaintiff's Treatment

April, 1997 imaging studies, prior to the removal of the right kidney, show multi cystic disease (Tr. 619, 659). September, 2008 treating records note Plaintiff's report of lower extremity numbness and cramps (Tr. 425). She denied weakness and demonstrated full muscle strength (Tr. 425). November, 2008 records note a January, 2005 diagnosis of gastric lymphoma (Tr. 609). EMG studies of the bilateral lower extremities were normal (Tr. 425, 427-428). June, 2009 neurological records note Plaintiff's continued report of extremity

---

[2]As discussed below, I find that the ALJ properly found that *res judicata* applied to the period between September 30, 2008 and September 28, 2010. Nonetheless, records from this period are included for background purposes.

weakness and sensitivity (Tr. 433).   She demonstrated full muscle strength (Tr. 434).

Praveen Dayalu, M.D. recommended vitamin D3 supplements and a low dose of

antidepressive medication (Tr. 434).  An August, 2010 CT of the abdomen was unremarkable

(Tr. 523).  In October, 2010, Plaintiff underwent surgery for the removal of gastric lymphoid

tissue (Tr. 581, 585).

January, 2011 records forward show no evidence of another recurrence of lymphoma

(Tr. 430, 570 ).  March, 2011 records note that Plaintiff was "doing well" following a ventral

hernia repair (Tr. 533).   March, 2011 records show chronic gastritis but no evidence of

lymphoma (Tr. 567).  An August, 2011 biopsy showed mild chronic gastritis (Tr. 517, 558-

559).   December, 2011 records note Plaintiff's diagnosis of "low-grade" lymphoma in

January, 2006[3] with a recurrence in October, 2010 (Tr. 430, 493).  The same month, Justin

Call, M.D. noted that Plaintiff experienced iron-deficiency anemia (Tr. 477).  An MRI of the

brain from the same month was unremarkable (Tr. 521, 552).

February, 2012 records by John Everett, D.O. note Plaintiff's report of fibromyalgia-

type symptoms (Tr. 468).  An April, 2012 examination by Dr. Call was unremarkable (Tr.

476).  Dr. Call increased Plaintiff's proton pump inhibitor use to twice daily to resolve

heartburn (Tr. 529).   May, 2012 imaging studies of the abdomen and chest were

unremarkable (Tr. 546). July, 2012 records by Paula Dekeyser, D.O. note a history of

lymphoma and abdominal pain, gastritis, and depression (Tr. 709).     In August, 2012,

---

[3]Earlier records show a diagnosis as of January, 2005 (Tr. 609).

Plaintiff reported abdominal pain and constipation (Tr. 699). Treating records note that she was fully oriented but appeared "chronically ill" and "disheveled" (Tr. 695). A September, 2012 biopsy was negative for malignancy (Tr. 684).

The same month, Plaintiff sought counseling services after reporting depression related to the stress of not knowing whether "her cancer is back or not" (Tr. 671). She reported suicidal ideation (Tr. 671). She reported a history of childhood physical and sexual abuse, current anxiety, mood swings, and irritability (Tr. 671). She acknowledged that her five children were taken away from her due to neglect and prior alcohol abuse (Tr. 671). Intake records note a mild concentrational impairment (Tr. 672). She was diagnosed with a depressive disorder and assigned a GAF of 56[4] (Tr. 675, 679). Treating records by Catherine S. Zimmerman, D.O. note that Plaintiff continued to take morphine for abdominal pain despite a negative biopsy (Tr. 705). Dr. Zimmerman discontinued the morphine but prescribed Oxycodone (Tr. 705). Physical therapy records note a recommendation for "deep heat" therapy and stretching (Tr. 846). In November, 2012, Plaintiff reported bilateral tinnitus (Tr. 729). Treating records note a history of sinusitis (Tr. 732, 736). Imaging studies of the cervical spine were unremarkable (Tr. 786). Imaging studies of the lumbar spine showed only mild degenerative changes at L5-S1 (Tr. 788).

---

[4]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34.

January, 2013 records by Dr. Dekeyser note Plaintiff's report of hand and foot numbness and abdominal pain (Tr. 783). April, 2013 physical therapy records note a limited range of joint motion but the ability to lift 35 pounds for up to five seconds (Tr. 742, 744, 826). Plaintiff was found to be able to perform exertionally light or sedentary lifting and walking (Tr. 744). Imaging studies of the cervical spine were unremarkable (Tr. 885). An MRI of the cervical spine from the same month showed only "mild" disc osteophyte at C4-C5 and C5-C6 (Tr. 884). Plaintiff demonstrated full grip strength with limited strength in the lower extremities (Tr. 877). She was able to ambulate normally (Tr. 877). Plaintiff admitted to smoking 11 to 20 cigarettes each day (Tr. 875).

The same month, Plaintiff sought psychological counseling, noting that she wanted to get her depression "under control" (Tr. 772). The following month, Plaintiff reported to Dr. Dekeyser that she was unable to participate in physical therapy due to her children's doctors' appointments (Tr. 780). She appeared alert and oriented with good insight and judgment (Tr. 780). Respiratory testing showed borderline airway obstruction possibly due to obesity (Tr. 795).

In June, 2013, EMG testing of the upper extremities was negative (Tr. 883). The same month, Dr. Dekeyser found that Plaintiff experienced marked limitation in the ability to relate to coworkers and the public; maintain attention and concentration; meeting quotas, remembering simple instructions, maintain reliability; and work without special supervision (Tr. 761). Dr. Dekeyser found extreme limitation in the ability to perform at a consistent

pace (Tr. 761).  She found that Plaintiff would be expected to miss work more than three times each month (Tr. 762).  Dr. Dekeyser also found that Plaintiff experienced shortness of breath, wheezing, and episodic asthma, and bronchitis (Tr. 764).  She stated that she was "not sure" whether the physical impairments were consistent with the medical evidence, noting that the symptoms were "not lending to a good medical explanation" (Tr. 765).  She found Plaintiff incapable of even "'low stress'" work (Tr. 765).  She found that Plaintiff was able to sit, stand, and walk for a total of less than two hours a day and was limited to lifting 10 pounds on an occasional basis (Tr. 766).  She found that Plaintiff should avoid all exposure to perfume, soldering material, solvents, airborne hazards, dust, and chemicals (Tr. 767).  Dr. Dekeyser found that Plaintiff would be absent from work more than four days each month (Tr. 767).

June, 2013 physical therapy records note a reduced grip strength and obesity but otherwise normal readings (Tr. 1127).  The following month, Plaintiff reported that she was very satisfied with the results of psychological counseling (Tr. 776).  She reported ongoing depression despite the use of Cymbalta and Xanax (Tr. 968).  EMG testing of the lower extremities show bilateral lower limb sensory neuropathy but no evidence of radiculopathy (Tr. 881, 1141).  Respiratory testing showed only mild airway obstruction with "mild to moderate" reduction in diffusion capacity (Tr. 789).  An MRI of the lumbar spine from the same month showed mild disc bulging on L3-L4, minimal bulging at L4-L5, and "a very small" protrusion at L5-S1 (Tr. 886).  Dr. Dekeyser's August, 2013 records note Plaintiff's

continuing report of depression and abdominal pain (Tr. 778).   The same month, Plaintiff reported level "nine" out of ten tingling pain with touch sensitivity and numbness (Tr. 926-927).  She was prescribed Lyrica and home exercise (Tr. 942).  In September, 2013, Plaintiff reported continued depression and fatigue (Tr. 810).  She attributed depressive symptoms to family problems (Tr. 972).  She was advised to increase her activities and fluid intake (Tr. 810).  Imaging studies of the chest and abdomen from the same month were essentially unremarkable (Tr. 820, 1373).

October, 2013 epidural steroid injections were performed without complications (Tr. 855).   Therapy records note that Plaintiff was upset due to family problems and the possibility of her husband going to jail for marijuana possession (Tr. 975).  In December, 2013, Plaintiff sought emergency treatment for lower back pain (Tr. 1412).  An MRI of the lumbar spine showed a mild disc bulge at L5-S1 displacing the descending S1 nerve root (Tr. 1367).

Marcin Bleiberg, M.D.'s January, 2014 records note Plaintiff's report of no improvement in back pain following a radiofrequency procedure (Tr. 997).  Dr. Dekeyser's records from the same month state that Plaintiff had been cleared for a discectomy at L5-S1 (Tr. 1314).  March, 2014 records note that Plaintiff was upset and depressed due to her husband's infidelity and his incarceration for failure to pay child support (Tr. 1037).  The following month, Dr. Dekeyser found that physical therapy records supported "the chronic nature of her symptoms" and that "the pathology is consistent with her pain level" (Tr. 1306).

Dr. Dekeyser found that Plaintiff had a poor prognosis due to depression, COPD, and back and lower extremity problems (Tr. 1282). She precluded all lifting, pushing, and postural activity (Tr. 1282). May, 2014 psychiatric records by Dale Owen, M.D. note Plaintiff's report of suicidal ideation and continuing depression due to family and personal problems (Tr. 981). Plaintiff reported that she was able to finish high school online (Tr. 981). Dr. Owen noted that Plaintiff was tearful throughout the session (Tr. 982). He assigned her a GAF of 45 due to severe depression, a personality disorder, physical conditions, and her husband's incarceration[5] (Tr. 982).

Dr. Dekeyser's notes from the same month note that Plaintiff was recently ticketed for driving with a suspended license (Tr. 1300). Physical therapy records from the following month and July, 2014 note that Plaintiff was able to walk for over 30 minutes at a time (Tr. 1203-1204). November, 2014 physical therapy records note Plaintiff's report of lower extremity numbness (Tr. 1056). Plaintiff was observed carrying a 32-pound backpack (Tr. 1056). She demonstrated a full range of motion (Tr. 1057). Benjamin Kolly, PT found that her rehabilitation potential was "good" (Tr. 1070). He recommended that Plaintiff "take responsibility for her pain and self reported loss of function" (Tr. 1058). Dr. Owen's records from the same month state that Plaintiff's dosage of Klonopin had been adjusted downward after she appeared to be over medicated (Tr. 1105). The same month, Plaintiff was

---

[5]

A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM-IV-TR* at 34.

prescribed a nebulizer (Tr. 1398-1399).

January, 2015 counseling records state that Plaintiff's psychological symptoms were exacerbated by forgetting to take prescribed medicine (Tr. 1211).  She denied "significant depressive issues" (Tr. 1211).  She reported that she was currently taking a college course (Tr. 1215).   An MRI of the lumbar spine was unchanged from an earlier study (Tr. 1449). Notes from the following month state that Plaintiff was receptive to recommended dietary changes (Tr. 1219).  She reported that she was doing "cardio" exercises at home (Tr. 1224). Notes by Dr. Dekeyser from the same month state that Plaintiff's husband sought a letter stating that Plaintiff required his care giving services (Tr. 1320).   The same month, neurosurgeon R. Blaine Rawson, M.D. recommended a "minimally invasive" discectomy at L5-S1 (Tr. 1392, 1401).  March, 2015 records note no recurrence of lymphoma since 2010 (Tr. 1029, 1383).  Dr. Dekeyser recommended that Plaintiff "continue to have assistance from her husband with daily care . . . ." (Tr. 1453).   Counseling reords state that she was walking two miles daily (Tr. 1238).  April, 2015 physical therapy records note Plaintiff's report of poor balance but that she was able to take walks (Tr. 1100).  The same month, Dr Owen noted that Plaintiff's husband was in jail and that she continued to experience financial stressors (Tr. 1111).  Counseling records from the same month state that Plaintiff was able to quit smoking in response to receiving a diagnosis of COPD (Tr. 1265).

Counseling notes from the following month note that Plaintiff had been denied public assistance for help paying her rent and utilities (Tr. 1277).   Plaintiff sought emergency

treatment for breathing problems (Tr. 1408-1409). The same month, Dr. Dekeyser found that Plaintiff was unable to work due to depression, lumbar disc disease, extremity pain, and a mood disorder (Tr. 1279). She found that Plaintiff was limited to lifting less than 10 pounds occasionally and sitting six hours in an eight-hour workday (Tr. 1279). She found that Plaintiff needed personal assistance four hours a day for bathing, grooming, taking medication, meal preparation, shopping laundry, and housework (Tr. 1280). The same month, Plaintiff was discharged from physical therapy for inconsistent attendance (Tr. 1389). In July, 2015, Plaintiff sought emergency treatment for a cough but denied other health problems (Tr. 1427).

In August, 2015, Plaintiff sought emergency treatment for abdominal pain (Tr. 1460). Treating records note that Plaintiff continued to smoke (Tr. 1462). A review of systems was unremarkable with a notation that it was "very difficult to communicate" with Plaintiff "due to her "obvious mood disorders" (Tr. 1463, 1478-1479). A biopsy as well as an endoscopy from the following month showed normal results (Tr. 1475, 1493). October, 2015 records note that Plaintiff had received help with rent and utilities and was planning on taking classes (Tr. 1419).

### 2. Consultative and Non-Examining Sources

In July, 2012, Jerry Evans, M.D. performed a non-examining review of the records on behalf of the SSA finding that Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and

pull without limitation (Tr. 128).  Dr. Evans found that Plaintiff could perform postural activity occasionally with the exception of a preclusion on climbing ladders, ropes, or scaffolds (Tr. 129).  He found that Plaintiff should avoid concentrated exposure to temperature extremes,humidity, and vibration; and avoid all exposure to hazards such as machinery and heights (Tr. 129-130).

In April, 2015, Chelsea Duggan, D.O. examined Plaintiff on behalf of the SSA, noting Plaintiff's report of asthma and COPD for over 10 years (Tr. 984).  Plaintiff reported that she was unable to walk more than four blocks (Tr. 984).  She also reported overall body pain due to fibromyalgia (Tr. 984).  She admitted to smoking one pack of cigarettes each day (Tr. 985).  Dr. Duggan noted full orientation, a full range of motion. and a normal gait (Tr. 985-988).  She found that Plaintiff could lift up to 20 pounds frequently, sit for eight hours in an eight-hour workday, stand for two, and walk for one (Tr. 990).  She found that Plaintifff could handle, finger, and feel continuously, reach frequently, and push or pull occasionally (Tr. 991).  She found that Plaintiff could operate foot controls continuously (Tr. 991).  She found that Plaintiff could perform occasional postural activity except for a preclusion on all climbing (Tr. 992).  She found that Plaintiff could be exposed to environmental hazards frequently except for occasional exposure to unprotected heights (Tr. 993).  She found no limitation in activities of daily living (Tr. 994).

The same month, Robert J. Devers, Psy.D. examined Plaintiff on behalf of the SSA, noting Plaintiff's report of daily suicidal ideation but some help from psychotropic medication (Tr. 1046). Plaintiff reported stress and anger due to neuropathy, fibromyalgia, and her husband's repeated incarcerations in the county jail (Tr. 1047). She admitted that her husband was a registered sex offender (Tr. 1047). She reported that she was regularly able to perform self-help and house chores with little assistance but occasionally required help washing her hair (Tr. 1047-1048). Dr. Devers noted slowed motor activity (Tr. 1048). He noted no symptoms of psychosis (Tr. 1048). He noted that Plaintiff appeared fully oriented but noted the "rambling nature of her speech" (Tr. 1049). Dr. Devers found the conditions of major depression, a panic disorder, and impulse control disorder with a poor prognosis due to psychological stressors combined with "failing" health (Tr. 1049-1050). He concluded that while Plaintiff was capable of following simple instructions and completing tasks, "her ability to maintain focus, problem solve, and cope with productivity demands are very low" (Tr. 1050). He found that employment "would likely exacerbate her symptoms of mental illness . . . ." (Tr. 1050). He found that Plaintiff could manage her benefit funds (Tr. 1050). He found moderate limitation in the ability to understand, remember and carry out complex instructions; make work-related decisions; and interact appropriately with the general public (Tr. 1052). He found marked limitation in the ability to interact with supervisors and coworkers and respond appropriately to workplace changes (Tr. 1052).

C.     **Vocational Expert Testimony**

VE Browde classified Plaintiff's past work as a bonding machine operator as unskilled and exertionally light (medium as performed) and work as a nurse assistant, semiskilled and exertionally medium[6] (Tr. 78-79).  The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, education, and work background:

> This person can . . . occasionally lift 20 pounds, frequently lift 10 pounds, can stand or walk two hours at a time, can sit eight hours, and should have the ability to change position such that they are - - for every five or ten minutes of standing or walking they're able to sit for 15 minutes.  This person could frequently climb stairs, never climb ladders and scaffolds, occasionally balance, frequently stoop, occasionally kneel, occasionally crouch, occasionally crawl.  This person would only frequently be required to reach . . . either forward or overhead.  This person would only occasionally be exposed to extreme cold, extreme heat, wetness, fumes, or commercial driving.  This person could frequently be exposed to noise at - - in an office environment level of noise, and only occasionally to louder than that.  This person would be limited to performing simple, routine and repetitive tasks but not at a production rate pace.  This person would be limited to making simple work-related decisions.  This person would have frequent contact with supervisors and coworkers but only occasional contact with the public.  This person would be limited to tolerating few changes in a routine work setting which would be defined as working in the same place, doing the same thing every day.  And this hypothetical person would have no further limitations.

---

[6]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Would the hypothetical person . . . be able to perform the past relevant work of bonding machine operator and nurse assistant? (Tr. 80).

The VE testified that the above restrictions would preclude all of Plaintiff's past relevant work but would allow for the unskilled, sedentary work of a bench inspector (14,500 jobs in the national economy); addresser (9,800); and surveillance system monitor (9,800) (Tr. 80-81). The VE testified that the need to take two 15 minute breaks a day and one 30-minute lunch break would not change the findings (Tr. 82) but that one unexcused absence each month would erode the job numbers by 50 percent (Tr. 82-83).

In response to questioning by Plaintiff's counsel, the VE stated that the need to take two or three unexcused absences a month would be work preclusive (Tr. 85). The VE stated further that a 10-minute break every hour in addition to the scheduled breaks would also be work preclusive (Tr. 87-88). However, he found that if the individual took an unscheduled five to ten-minute break only during the hours that she did not have a scheduled 15 or 30-minute break, the need to break would not be work-preclusive (Tr. 88).

### D.  The ALJ's Decision (December 14, 2015)

As an initial matter, the ALJ found that Plaintiff had not made a showing of "new and material evidence" supporting the reopening of the period between September 30, 2008 and the initial denial of September 28, 2010 (Tr. 11). Accordingly, she found that the February 23, 2012 dismissal of the earlier claim "administratively final and binding" (Tr. 12). Next, citing the medical records, ALJ Hurt found that Plaintiff experienced the severe impairments of "fibromyalgia, [COPD], asthma, peripheral neuropathy, and depression" but that none of

-18-

the conditions met or medically equaled impairments listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1 (Tr. 14-15). She found that the conditions of degenerative joint disease,

degenerative disc disease, and gastric lymphoma (in remission) were non-severe (Tr. 14-15).

She found that Plaintiff experienced mild limitation in activities of daily living and moderate

limitation in social functioning and in concentration, persistence, or pace (Tr. 16-17). The

ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work

with the following additional limitations:

> She can occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk two hours in an eight-hour workday, and sit eight hours, and she should have the ability to change position, such that for every five to 10 minutes of standing or walking, she is able to sit for 15 minutes. The claimant can frequently climb stairs, but never climb ladders or scaffolds. She can occasionally balance, frequently stoop, occasionally kneel, occasionally crouch, and occasionally crawl. She can only frequently be required to reach forward or overhead. She can only occasionally be exposed to extreme cold, extreme heat, humidity, wetness, fumes, excessive vibration, or commercial driving. The claimant can have frequent exposure to noise in an office environment level of noise and only occasional exposure to louder noises. She should never be exposed to dangerous hazards. She is limited to performing simple, routine, repetitive tasks, but not at a production rate pace, as in an assembly line. She is limited to making simple work-related decisions. The claimant can have frequent contact with supervisors and coworkers, but only occasional contact with the public. She is limited to tolerating few changes in a routine work setting, defined as working in the same place doing the same thing every day (Tr. 17).

Citing the VE's findings, the ALJ found that Plaintiff could work as a bench inspector,

addresser, and surveillance system monitor (Tr. 25, 81).

The ALJ discounted Plaintiff's allegations of limitation, noting that an upper extremity EMG showed no evidence of abnormalities and that EMG testing of the spine and lower extremities showed only mild peripheral neuropathy of the lumbar paraspinal muscles (Tr. 19). The ALJ cited consultative examination records noting 5/5 strength in all extremities (Tr. 19). She noted that the breathing problems were controlled with medication (Tr. 19). She cited consulsive records showing adequate memory and concentration and that while Dr. Devers noted "rambling" speech he found no psychosis (Tr. 20-21). The ALJ noted that Plaintiff had no problems with personal care and was able to take care of dogs and a calf and horse (Tr. 21). She reported that she could perform household chores, drive, shop, paint, read, and watch television (Tr. 21).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.

1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-21-

## V.  ANALYSIS

Plaintiff makes three arguments for remand, contending first that the ALJ erred by failing to provide an adequate rationale for rejecting Dr. Dekeyser's opinions of disability level physical and mental limitation.  *Plaintiff's Brief,* 16-21, *Docket #18,* Pg ID 1584.  Next, she disputes the ALJ determination that her neck and back conditions did not create significant work-related limitations.  *Id.* at 21-22.  Finally, she contends that the ALJ did not comply with the proper administrative procedure in finding that *res judicata* barred consideration of whether Plaintiff was disabled between September 30, 2008 and September 28, 2010.  *Id.* at 22-23.

### A.  Dr. Dekeyser's Treating Opinions

Plaintiff contends that the ALJ's accord of only "little weight" to Dr. Dekeyser's June, 2013, April, 2014, and May, 2015 opinions of disability level limitation is not well supported or explained.  *Id.* at 16 (*citing* Tr. 22, 761-767, 1279-1280, 1282); *see section* **II.B.1.**, *above*.

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). In the presence of contradicting substantial evidence

-22-

however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, *5 (1996).[7] In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The ALJ devoted an entire page of her determination to recounting Dr. Dekeyser's 2013, 2014, and 2015 opinions (Tr. 22-23). However, in support of the rejection of the opinions, the ALJ stated only that they were "not consistent with the claimant's treatment records, diagnostic studies, the findings of the consultative examiners, or activities of daily living (Tr. 23). The ALJ noted that Dr. Dekeyser's accompanying finding that Plaintiff was incapable of any work was an issue "reserved to the Commissioner" (Tr. 23 *citing* 20 C.F.R. § § 404.1527(e), 416.927(e).

_____

[7]The administration rescinded SSR 96-2p on March 27, 2017. *See Rescission of Social Security Rulings* 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 17, 2017). Under the new rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. The "new rules, however, apply only to claims filed on or after March 17, 2017." *Hancock v. CSS*, 2017 WL 2838237, at *8 (W.D. Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)). Because current Plaintiff filed his claim well before March 17, 2017, SSR 96-2p applies.

Defendant concedes that while the ALJ "did not provide a detailed explanation" for giving little weight to Dr. Dekeyser's opinions, the determination as a whole supports their rejection. *Defendant's Brief,* 7-15, *Docket #22,* Pg. ID 1608.  Contrary to this contention, the ALJ's determination, read as a whole, cannot be read to provide "good reasons" for rejecting Dr. Dekeyser's opinions.  First, the remainder of the opinion does not reference Dr. Dekeyer's treating records, despite the fact that she treated Plaintiff's continuously from July, 2012 forward.  Dr. Dekeyser's records indicate that she referred Plaintiff for physical therapy, psychological treatment, and treatment for the back condition.  Dr. Dekeyser's records from August, 2012 forward note that Plaintiff appeared "disheveled," depressed, suicidal, and exhibited concentrational difficulties (Tr. 695, 671, 982, 1463).   The ALJ's blanket statement that Dr. Dekeyer's opinions were not supported by the consultative sources is particularly unsatisfactory in light of Dr. Devers' January, 2015 consultative finding that Plaintiff exhibited slowed motor activity, "rambling" speech and had a poor psychological prognosis (Tr. (1049-1050).   Dr. Devers found further that Plaintiff's ability to meet productivity demands in a workplace setting was "very low" and that she experienced marked limitation in the ability to interact with supervisors and coworkers and respond appropriately to workplace changes (Tr. 1052). While the ALJ rejected Dr. Devers' more severe findings on the basis that they were based on Plaintiff's "subjective presentation," (Tr. 23), Dr. Devers' findings are not inconsistent with a treating psychiatrist's  diagnoses of severe depression and a personality disorder or Dr. Dekeyser's finding that Plaintiff experienced

long-term depression (Tr. 982, 1279).  Even assuming that Dr. Dekeyer's opinions could be wholly discounted based on her sympathy for Plaintiff's situational stressors, the same cannot be said of Dr. Devers' one-time consultative findings, the periodic psychiatric reviews, or an August, 2015 emergency room records stating that it was "very difficult to communicate" with Plaintiff "due to her "obvious mood disorders" (Tr. 1463, 1478-1479).

Given that the record as a whole contains significant support for Dr. Dekeyer's opinions, the ALJ's generalized finding that the opinions were not supported by the remainder of the record does not constitute adequate reasons for their rejection.  On this basis, a remand for further proceedings is warranted.

### B.  The Back and Neck Conditions

In her second argument, Plaintiff faults the ALJ's Step Two finding that the condition of degenerative disc disease was not a severe impairment.  *Plaintiff's Brief* at 21 (*citing* Tr. 14-15).

At Step Two, an "impairment or combination of impairments ... [is] found 'not severe' and a finding of 'not disabled' is made ... when medical evidence establishes only a slight abnormality or [ ] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856,*3 (1985). "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.' " *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. February 22, 2008)(*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "The goal of the test is to

'screen out totally groundless claims.' " *Id.* (*citing Farris v. Secretary of Health & Human Services*, 773 F.2d 85, 89 (6th Cir. 1985)).

20 C.F.R. § 404.1522(a) defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." See also SSR 85-28, supra, at *3. "Basic work activities" include the physical functions of "walking, standing, sitting" as well as the capacity for "seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and, "[d]ealing with changes in a routine work setting." *Id.*

As an initial matter, the ALJ's finding that degenerative disc disease did not create more than *de minimis* work-related limitations is contradicted by significant portions of the record. In finding that the condition was non-severe, the ALJ cited the imaging studies showing some degree of nerve root involvement at L5-S1 (Tr. 14-15). He noted that Plaintiff underwent epidural injections and nerve blocks to treat the condition. However, in the Step Two analysis, he did not acknowledge that Plaintiff was prescribed physical therapy for the joint problems, EMG studies showing some degree of neuropathy, or treating recommendations that Plaintiff undergo a discectomy at L5-S1 (Tr. 1392, 1401).

Nonetheless, the ALJ's omission of degenerative disc disease from the severe impairments at Step Two does not constitute grounds for remand. Even assuming that the ALJ erred in finding the condition of degenerative disc disease a severe impairment, the

failure to acknowledge an impairment at Step Two is harmless error provided that it is addressed at the remaining steps of the sequential analysis. *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Fisk v. Astrue*, 253 Fed.Appx. 580, 583-584, 2007 WL 3325869, *4 (6th Cir. November 9, 2007). While the conditions expected to cause workplace limitation "were not deemed to be severe at step two," the omission is "legally irrelevant" so long as they are factored in at the remaining steps of the analysis. *Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir. February 22, 2008)(*citing Maziarz* at 244).

 *Anthony* is applicable here. The ALJ's acknowledgment of degenerative disc disease later in her analysis, cures the Step Two "error." At Step Three, she found that Plaintiff did not meet the listed impairment for disorders of the spine (Tr. 15); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02A. Likewise, the RFC for sedentary work with a sit/stand option and limited postural activity addresses the degree of limitation caused by degenerative disc disease to the extent such limitation is actually supported by the record (Tr. 17).

 If anything, substantial evidence supports the finding that Plaintiff experienced a lessor degree of physical limitation than reflected in the RFC. The record includes findings that Plaintiff was able to walk for over 30 minutes at a time (1203-1204), perform "cardio" exercises at home (Tr. 1224), walk for two miles (Tr. 1238), and carry a 32-pound backpack (Tr. 1056). Because the RFC for a limited range of sedentary work with a sit/stand option, at a minimum, accounts for the limitations supported by the record, the ALJ's finding that

the condition of degenerative disc disease was not severe does not warrant a remand.

### C. HALLEX

Plaintiff also makes a one-paragraph argument that ALJ Hurt failed to comply with the requirements of *Social Security Administration Office of Hearings, Appeals and Litigation Law Manual* ("*HALLEX*") in determining that *res judicata* applied to the period between September 30, 2008 and September 28, 2010. *Plaintiff's Brief* at 22-23 (*citing HALLEX* I-2-1-13).

A chronology of the current case is as follows: Following ALJ Gruenburg's November 26, 2013 finding that Plaintiff was not disabled, the Appeals Council remanded the case for an addition hearing (Tr. 168-169). The Appeals Council found in relevant part that while ALJ Gruenburg considered whether Plaintiff was disabled from September 30, 2008 forward, the question of whether *res judicata* applied to the period between September 30, 2008 and September 28, 2010 remained unresolved. Upon remand, ALJ Hurt found that *res judicata* applied to that time period, noting that after an initial denial of benefits on September 28, 2010, Plaintiff's attorney requested a voluntary dismissal on February 21, 2011 (Tr. 11). ALJ Hurt noted that because Plaintiff did not make a showing of "new and material evidence" relating to the earlier period, the application of *res judicata* was appropriate (Tr. 11).

Under *HALLEX* I-2-4-40-B, *res judicata* applies to a prior determination when "1. There has been a previous determination or decision under the same subpart with respect to the same party; 2. The previous determination or decision was based on the same facts and on the same issue(s); and 3. The previous determination or decision has become final by either administrative or judicial action."  The earlier findings, decided under Titles II and XVI of the the Social Security Act meet the first prong of the *res judicata* test.  Likewise, the facts of this case satisfy the second and third prongs of the test.  The prior determination pertained to the period between September 30, 2008 and September 28, 2010 and the case was dismissed (based on Plaintiff's request) on February 23, 2011 (Tr. 118-121). "If an individual . . . files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, *res judicata* would bar the second application. *Earley v. Commissioner of Social Security*, — F.3d —,  2018 WL 3134547, at *3 (6th Cir. 2018).

Under *HALLEX*, I-2-9-40, an ALJ may open a prior decision in the instance where "new and material" evidence exists for the applicable period.  Plaintiff argues that in making the *res judicata* finding, the ALJ erred by failing to add the records from the earlier period to the current transcript.  *Plaintiff's Brief* at 23 (*citing   HALLEX* I-2-1-13).   *HALLEX* I-2-1-13-E states that "a claimant and appointed representative, if any, have the right to examine material that constitutes or will constitute the evidence of record. Any information on which the ALJ relies from a prior claim(s) file will be added to the record . . . and will be

made available to the claimant and appointed representative, if any, for review."  However, under the same subsection, "[a]n ALJ does not have an obligation to provide a claimant an opportunity to review a prior claim(s) file *if the ALJ does not rely on any information from the prior claim(s) file*" in making the *res judicata* determination. (Emphasis added).

Plaintiff's *HALLEX* claim is without merit.  First, ALJ Hurt found that "[i]n the current claim, the claimant did not make a showing of new and material evidence relating to the period [between September 30, 2008 and September 28, 2010]" and that "[t]here is nothing in the current record that would change the decision made in the prior case" (Tr. 11). ALJ Hurt made clear that her finding that *res judicata* applied to the prior claim was based wholly on Plaintiff's failure to cite even one piece of "new and material evidence" which would provide a basis for changing the earlier decision.  ALJ Hurt's findings cannot possibly be read to state that she considered the earlier records in making the *res judicata* finding.[8] The fact that she did not rely on the earlier findings obviated the need to provide claimant with copies of the same.  *HALLEX* I-2-1-13-E.

Moreover, the failure to comply with *HALLEX,* by itself, does not provide grounds for remand by a reviewing court.  "'No circuit has held that the HALLEX creates constitutional rights because, of course, only the Constitution, not an agency's rules or

---

[8]While the ALJ stated at the hearing that she would examine the prior file (Tr. 44), she noted in the administrative opinion that her decision not to reopen the earlier period was based on Plaintiff's failure to offer any new and material evidence for the prior claim (Tr. 11).  The administrative opinion does not contain any citation to the earlier record.

procedures, is the source of such rights.'" *Dukes v. CSS*, 2011 WL 4374557, *9 (W.D. Mich.

September 19, 2011) (*citing Davenport v. Astrue*, 417 Fed.Appx. 544, 547–48 (7th Cir.

2011)). "[W]hile the *HALLEX* procedures are binding on the Social Security Administration,

they are not binding on courts reviewing the administration's proceedings. *Id. (citing Bowie*

*v. CSS,* 539 F.3d 395, 399 (6th Cir. 2008))(same).  Rather, the question before the reviewing

Court is whether the claimant received due process under the Fifth Amendment which

"requires that a social security hearing be 'full and fair.'" *Flatford v. Chater*, 93 F.3d 1296,

1305 (6th Cir. 1996) (*citing Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28

L.Ed.2d 842 (1971)).

To be sure, in some circumstances, a *HALLEX* violation may result in a deprivation

of due process. *See Gaines v. CSS*, 2013 WL 4494966, *8-9 (E.D. Tenn. August 20,

2013)(failure to give claimant opportunity to "review and comment" on latter submitted

evidence in violation of *HALLEX* also a violation of her due process rights).  Such is not the

case here.  While Plaintiff argues that the ALJ failed to comply with the requirements of

*HALLEX,* she has not provided even one piece of  evidence or presented argument that the

newer records contain new and material evidence justifying the reopening of the prior claim.

Accordingly, I recommend that her *HALLEX* arguments should be rejected.

In closing, I note that while the ALJ's failure to provide "good reasons" for

discounting Dr. DeKeyser's treating opinions requires further proceedings, a remand for an

award of benefits on this record is not warranted.   An award of benefits is appropriate "only

if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. HHS*, 17 F.3d 171, 176 (6th Cir. 1994).

## VI. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #18] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings and that Defendant's Motion for Summary Judgment [Dock. #22] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 16, 2018          s/R. Steven Whalen
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE

---

**CERTIFICATE OF SERVICE**

I hereby certify on July 16, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 16, 2018.

                              s/Carolyn M. Ciesla
                              Case Manager for the
                              Honorable R. Steven Whalen